ATTORNEYS FOR APPELLANTS
Richard N. Bell
Arend J. Abel
Kelley J. Johnson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
David S. Wallace
B. Joseph Davis
Muncie, Indiana

_____

# In the
# Indiana Supreme Court



FILED

Feb 27 2008, 2:52 pm

CLERK
of the supreme court,
court of appeals and
tax court

### No. 18S04-0704-CV-150

LINDA KEESLING, HAROLD LEPHART AND
PRISCILLA LEPHART, HAGAR ANDERSON,
JAMES BRIDGES, EARL AND EVELYN HAIBE,
ESCAR AP, MABEL MCGUFFEY, RUTH AMICK,
AND DORA BUTRUM,

*Appellants (Plaintiffs below)*,

v.

FREDERICK BEEGLE III, JOHN BUCHOLTZ,
FLORIDA UNDERWRITING CO., DENNIS
BAUGHER, WILLIAM JONES, AND ADVANCE INSURANCE
MARKETING,

*Appellees (Defendants below)*.

_____

Appeal from the Delaware Circuit Court, No. 18C01-0202-PL-0008
The Honorable Marianne L. Vorhees, Judge

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 18A04-0501-CV-10

_____

**February 27, 2008**

**Sullivan, Justice.**


Both Congress and the Indiana General Assembly have passed statutes called "RICO Acts" to combat "racketeer influenced and corrupt organizations." There is a conflict between opinions of the Court of Appeals as to whether liability under the Indiana RICO Act extends only to persons who direct racketeering activity (the rule under the Federal RICO Act) or extends below the managerial or supervisory level to a racketeering enterprise's "foot soldiers" as well.

Because the Indiana Act uses language significantly broader than that of the Federal Act, we conclude that it imposes RICO liability both on persons at and below a racketeering enterprise's managerial or supervisory level.

**Background**

The plaintiffs in this case are Indiana residents who purchased pay telephones and simultaneously entered into service agreements to install, service, and maintain the telephones. The telephone purchase contracts and the service agreements were marketed and sold by their promoters to the plaintiffs as a package. The plaintiffs were passive investors in this program, completely relying on the promoters to select a suitable location for the pay telephones, install and maintain them, pay all monthly telephone and utility bills, and obtain all regulatory certifications. SEC v. Rubera, 350 F.3d 1084, 1091-92 (9th Cir. 2003). The promoters violated federal securities laws by not registering the pay telephone investment program with the Securities and Exchange Commission. Id. at 1093. More details on the failed payphone program are set forth in the Rubera decision.

Defendant Dennis Baugher, president and sole owner of defendant Florida Underwriting Co., was not one of the ultimate promoters of the payphone program. In fact, the trial court in this case found that the plaintiffs presented no evidence showing that Baugher "had any role in directing" the payphone program. (Order Granting Mot. For Summ. J. by Defs. Dennis Baugher and Florida Underwriting Co., Br. of Appellants at 42). But Baugher did have an agreement with the ultimate promoters of the payphone program to recruit sales representatives and receive commissions on the sales made by his recruits.

Baugher recruited defendant William Jones, co-owner of defendant Advanced Insurance Marketing, Inc. And Jones recruited Joe Richman as a sales representative for the payphone program. Although Jones did not make sales himself, he received commissions on Richman's sales. Richman made sales to plaintiffs Linda Keesling, Harold Lephart, and Priscilla Lephart.

2

Our reading of the record indicates that six of the remaining plaintiffs purchased investments in the payphone program from defendant John Bucholtz and one from defendant Ronald Van Deusen. It does not appear that plaintiff Hagar Anderson purchased an investment in the payphone program from any of the defendants nor that defendant Frederick Beegle III sold an investment in the payphone program to any of the plaintiffs.

The plaintiffs sued the defendants for their respective roles in the payphone program, alleging violations of Ind. Code § 23-2-1-19 (the "Indiana Securities Act") and § 35-45-6-2 (the "Indiana RICO Act" or "Indiana Act"), fraud, conversion, and theft. The trial court entered summary judgment in favor of the defendants on some counts with respect to some plaintiffs. The Court of Appeals affirmed the trial court's grant of summary judgment in favor of defendants Beegle, Bucholtz, and Advanced Insurance Marketing in all respects and in favor of defendants Baugher, Florida Underwriting, and Jones with respect to the fraud, conversion, and theft allegations. Keesling v. Beegle, 858 N.E.2d 980, 993-96 (Ind. Ct. App. 2006).[1] The Court of Appeals reversed the trial court's grant of summary judgment in favor of defendants Baugher, Florida Underwriting, and Jones with respect to the Indiana Securities and RICO Acts allegations. Id. at 988, 992-93, 995. We granted transfer. 869 N.E.2d 455 (Ind. 2007) (table).[2]

This opinion addresses the potential liability of defendants Baugher, Florida Underwriting, and Jones with respect to the Indiana RICO Act. In all other respects, the opinion of the Court of Appeals is summarily affirmed. Ind. Appellate Rule 58(A)(2).

---

[1] The opinion of the Court of Appeals lists defendant Ronald Van Deusen as an appellee. However, it appears that the appeal as to Van Deusen was not perfected, Keesling, 858 N.E.2d at 984 n.6, and we do not treat Van Deusen as a party to this appeal.

[2] Transfer was granted on the case of Keesling v. Richman. See 869 N.E.2d 455 (Ind. 2007) (table). Sales representative Joe J. Richman was one of the defendants in the trial court. He was, however, not one of the appellees in the Court of Appeals, and we do not treat him as a party to this appeal.

**Discussion**

**I**

The plaintiffs contend that each of defendants Baugher, Florida Underwriting, and Jones violated Indiana's Corrupt Business Influence Act by "conduct[ing] or otherwise participat[ing] in the activities of [an] enterprise through a pattern of racketeering activity." I.C. § 35-45-6-2(3) (the "Indiana RICO Act" or "Indiana Act"). In granting summary judgment in favor of the defendants, the trial court rejected this contention based on the following analysis:

> Even if Plaintiffs have designated evidence sufficient to create a fact issue as to the "conduct" element, Indiana law requires plaintiffs to establish a second element: defendant must play some part in directing the enterprise's affairs. Yoder Grain, Inc. v. Antalis, 722 N.E.2d 840, 846 (Ind. [Ct.] App. 2000). Plaintiffs designated no evidence to the Court, either in the designation or in the brief, to show that these defendants had any role in directing this enterprise's affairs.

(Order Granting Mot. For Summ. J. by Defs. Dennis Baugher and Florida Underwriting Co., Br. of Appellants at 42.)[3]

In Yoder Grain, the plaintiffs, investors in an automotive venture, had alleged that the defendant had "violated the Indiana and federal civil RICO provisions." 722 N.E.2d at 844. The Court of Appeals began its analysis by declaring "that Indiana RICO is patterned after federal RICO[4] and thus we discuss the Investors' federal and state RICO claims jointly." Id. at 845. "[I]n order to satisfy the 'conduct' element," the Yoder Grain court held that U.S. Supreme Court precedent dictated that "the plaintiff must allege that the defendant 'participated in the operation or management of the enterprise itself,' and that the defendant played 'some part in directing the enterprise's affairs.'" Id. at 846 (quoting Reves v. Ernst & Young, 507 U.S. 170, 179 (1993)). The Yoder Grain court also quoted a Seventh Circuit decision to support its holding: "[M]ere participation in the activities of the enterprise is insufficient; the defendant must participate in the

---

[3] The trial court used identical language in its Order Granting Mot. For Summ. J. by Defs. William Jones and Advanced Insurance Marketing. (Br. of Appellants at 36.)

[4] 18 U.S.C. § 1962(c) (2000) (the "Federal RICO Act" or "Federal Act").

4

operation or management of the enterprise." Id. at 846 (quoting Goren v. New Vision Int'l, Inc., 156 F.3d 721, 727 (7th Cir. 1998)).

In this case, the Court of Appeals took a decidedly different approach from its Yoder Grain decision. It "observe[d] that Indiana's RICO statute sweeps more broadly than the federal statute, in that it speaks of 'conduct[ing] or otherwise participat[ing] in the activities of [an] enterprise[.]' Clearly, 'activities' encompasses a wider range of exploits than 'conduct' and does not require 'an element of direction.'" Keesling, 858 N.E.2d at 990-91 (emphasis in the original, citations omitted).

We resolve this conflict between the Yoder Grain and Keesling decisions of the Court of Appeals in favor of the interpretation of the Indiana RICO Act adopted by the Court of Appeals in Keesling for the reasons set forth below.

## II

The Indiana General Assembly enacted the Indiana RICO Act ten years after Congress enacted the Federal RICO Act.[5] While the General Assembly clearly could have used the same language as the Federal Act, the relevant language of the Indiana Act is significantly different. The Federal RICO Act provides:

> It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (2000). The Indiana RICO Act provides:

---

[5] President Richard Nixon signed RICO (Title IX of the Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922 (1970)), into law on October 15, 1970. 1 David B. Smith & Terrance G. Reed, Civil RICO § 1.01 (Supp. Oct. 2007). Indiana RICO was introduced as Senate Bill 194, "[a] Bill For An Act to amend IC 34-4 and IC 35-45 concerning racketeering activity." Indiana Senate Journal, 1980 Regular Session, at Senate 12. Indiana Governor Otis R. Bowen signed Indiana RICO (Senate Enrolled Act 194) into law on February 27, 1980. Id. at Senate 483.

> A person who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity; commits corrupt business influence, a Class C felony.

I.C. § 35-45-6-2(3) (2004).

The most important difference between the language of these two statutes is that the Federal Act imposes liability on a person who "conduct[s] or participate[s] . . . in the conduct of such enterprise's affairs" while the Indiana Act imposes liability on a person who "conducts or otherwise participates in the activities of that enterprise." The United States Supreme Court has attached significance to the fact that Congress chose to use the word "conduct" twice in the Federal Act. Reves, 507 U.S. at 178 ("Congress could easily have written 'participate, directly or indirectly, in [an] enterprise's affairs,' but it chose to repeat the word 'conduct.'"). In restraining the scope of liability under the Federal Act, the Supreme Court concluded that "both as a noun and a verb in this subsection 'conduct' requires an element of direction." Id.

But "conduct" is used only once in the Indiana Act – as a verb. We believe that by not using "conduct" as a noun, the Legislature wrote the Indiana Act to mean what the Reves court said Congress could have written but didn't: a statute that extends liability beyond just those who conduct the racketeering enterprise's affairs to reach those who assist the enterprise below the managerial or supervisory level. By imposing liability not just on a person who "conducts . . . the activities" of a racketeering enterprise but also on a person who "otherwise participates in the activities" of a racketeering enterprise, we think it clear that scope of liability under the Indiana Act is broader than under the Federal Act.

In summary, the Federal Act imposes liability on persons who <u>conduct or participate in the conduct of</u> a racketeering enterprise. The Indiana Act goes further to impose liability both on persons who <u>conduct the activities of</u> a racketeering enterprise and on those who <u>otherwise participate in the activities of</u> a racketeering enterprise. We conclude that the Legislature intended for the Indiana Act to reach persons "below the managerial or supervisory level" as well as those who "exert control or direction over the affairs of [a racketeering] enterprise," <u>see</u>

6

State v. Siferd, 783 N.E.2d 591, 603 (Ohio Ct. App. 2002); i.e., to reach a racketeering enterprise's "foot soldiers" as well as its "generals," see United States v. Oreto, 37 F.3d 739, 751 (1st Cir. 1994), cert. denied, 513 U.S. 1177 (1995).

### III

To test this conclusion, we have surveyed our sister states and their treatment of this issue as it pertains to their own RICO statutes. Our research indicates that 26 states (including Indiana) and Puerto Rico have enacted their own "little RICO" statutes.[6] The RICO statutes in ten of these jurisdictions have provisions almost identical to the Federal RICO Act.[7] Four states have RICO provisions that are very different from both the Federal and Indiana Acts.[8] The remaining thirteen states have state RICO provisions almost identical to the Indiana RICO Act.[9] And of these thirteen, courts in three have directly confronted the question presented in this case, i.e., whether the scope of liability imposed by their "little RICO" statutes is broader than that imposed by the Federal Act.

A federal district court has taken the same approach as Yoder Grain in analyzing the conduct element of the Colorado RICO Act.[10] While acknowledging the difference between the

---

[6] 10 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 4951.80 (perm. ed., rev. vol. 2001 & Cum. Supp. 2007).

[7] See Del. Code Ann. tit. 11, § 1503 (2007); Idaho Code Ann. § 18-7804(c) (2007); Haw. Rev. Stat. Ann. § 842-2(3) (2007); N.J. Stat. Ann. § 2C:41-2(c) (2007); N.M. Stat. Ann. § 30-42-4(C) (2007); N.D. Cent. Code § 12.1-06.1-03(2) (2007); 18 Pa. Cons. Stat. § 911(b)(3) (2007); P.R. Laws Ann. tit. 25, § 971b(c) (2004); R.I. Gen. Laws § 7-15-2(c) (2007); Utah Code Ann. § 76-10-1603(3) (2007).

[8] See Ariz. Rev. Stat. Ann. § 13-2301 et seq. (2007); Cal. Penal Code § 186.1 (2007); N.Y. Penal Law § 460.20 et seq. (2007); Wash. Rev. Code Ann. § 9A.82.001 (2007).

[9] See Colo. Rev. Stat. Ann. § 18-17-104(3) (2007); Conn. Gen. Stat. Ann. § 53-395(c) (2007); Fla. Stat. Ann. § 895.03(3) (2007); Ga. Code Ann. § 16-14-4(b) (2007); Minn. Stat. Ann. § 609.903(1) (2007); Miss. Code Ann. § 97-43-5(3) (2007); Nev. Rev. Stat. Ann. § 207.400(1)(c) (2005); N.C. Gen. Stat. Ann. § 75D-4(a)(2) (2007); Ohio Rev. Code Ann. § 2923.32(A)(1) (2007); Okla. Stat. Ann. tit. 22, § 1403(A) (2007); Or. Rev. Stat. Ann. § 166.720(3) (2005); Tenn. Code Ann. § 39-12-204(c) (2007); Wis. Stat. Ann. § 946.83(3) (2007).

[10] "It is unlawful for any person employed by, or associated with, any enterprise to knowingly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt." Colorado Organized Crime Control Act, Colo. Rev. Stat. Ann. § 18-17-104(3) (2007).

language in the Colorado and Federal Acts, the court concluded that "the difference is insignificant in light of the Supreme Court's similar construction of each use of the word 'conduct' in RICO." F.D.I.C. v. First Interstate Bank of Denver, N.A., 937 F. Supp. 1461, 1471-72 (D. Colo. 1996), citing Reves, 507 U.S. 170.

On the other hand, the Georgia Court of Appeals has taken the same approach we do today. In Faillace v. Columbus Bank & Trust Co., it held that "although some participation in the racketeering activity is clearly required, there is nothing in OCGA § 16-14-4(b) to suggest that each participant must hold a directorial or managerial position concerning that activity before criminal liability attaches. In this respect, the Georgia statute is significantly broader than the federal statute on which it was modeled." 605 S.E.2d 450, 454 (Ga. Ct. App. 2004).

This is also the approach taken by the Ohio Court of Appeals and we find its analysis the most persuasive. In State v. Siferd, Siferd appealed his conviction for violating the Ohio RICO Act[11] on grounds that the State had not proven him to have "participate[d] in the operation or management of the enterprise itself." 783 N.E.2d at 599.[12] Siferd contended that "criminal liability should be limited to the 'brain trust' of the organization." Id.

The Siferd court started with the U.S. Supreme Court's Reves decision that we have discussed, supra, and noted its emphasis on the fact that Congress used the word "conduct" twice. Id. at 601, quoting Reves, 507 U.S. at 177-178. "Unlike the federal RICO act," the Ohio court said, "the Ohio legislature chose not to repeat the word 'conduct' in [the Ohio RICO Act]. Instead, the phrase 'participate in, directly or indirectly, the affairs of the enterprise' was adopted." The Ohio court continued:

> The Supreme Court recognized in Reves that Congress could "easily" have utilized nearly identical language – "participate, directly or indirectly, in [an] enterprise's affairs" – to support a more expansive application. Indeed, the plain meaning of "participate," commonly understood as "taking part in" an enterprise's affairs, dictates that [the Ohio RICO Act] was not intended to be

---

[11] Ohio Corrupt Activity Act, Ohio Rev. Code § 2923.32(A)(1) (2007).

[12] The Ohio Supreme Court granted discretionary review (and affirmed) on a separate issue. Siferd v. State, 789 N.E.2d 237 (Ohio 2003).

limited to those who have directed the pattern of corrupt activity. The precise language of the statute clearly encompasses those who have performed activities necessary or helpful to the operation of the enterprise, whether directly or indirectly, without an element of control.

Siferd, 783 N.E.2d at 602 (footnotes omitted). The Court concluded with a reference to the policy of the Ohio RICO Act itself:

> Considering the plain language of the statute and the legislative intent and public policy considerations behind Ohio's Corrupt Activity Act, we conclude that the activity of those who do not manage or supervise racketeering activity, but nevertheless assist it, is inimical to the interests identified and see no reason why the legislature would limit liability to those who control the enterprise. We hold that participatory conduct or activities may be found in acts that are below the managerial or supervisory level and do not exert control or direction over the affairs of the enterprise.

Id. at 603.

## IV

The trial court granted summary judgment in favor of defendants Baugher, Florida Underwriting, and Jones with respect to the plaintiffs' Indiana RICO Act allegations on the basis that the plaintiffs had presented no evidence to show that these defendants "had any role in directing" the payphone program's affairs. (Order Granting Mot. For Summ. J. by Defs. Dennis Baugher and Florida Underwriting Co., Br. of Appellants at 42.)[13] Because we hold that the level of participation necessary to implicate the Indiana Act need not rise to the level of direction, such a showing was unnecessary and summary judgment was not justified on that basis.

---

[13] The trial court uses identical language in its Order Granting Mot. For Summ. J. by Defs. William Jones and Advanced Insurance Marketing. (Br. of Appellants at 36.) See supra, n.3.

9

## Conclusion

We vacate the trial court's grant of summary judgment in favor of defendants Baugher, Florida Underwriting, and Jones with respect to the plaintiffs' Indiana RICO Act allegations. In all other respects, we summarily affirm the opinion of the Court of Appeals. We remand to the trial court for further proceedings in accordance with this opinion and that of the Court of Appeals.

Shepard, C.J., and Boehm, J., concur.

Dickson, J., dissents with separate opinion in which Rucker, J., concurs.

**Dickson, Justice, dissenting.**

The Court today construes Indiana's RICO Act to impose liability beyond those who substantially participate in the enterprise, to persons below the managerial or supervisory level, based upon linguistic variation between the Federal RICO statute and the Indiana Act. I disagree, finding the modest language differences to be insignificant and inconclusive.

Furthermore, in 2000, the Court of Appeals reached a different conclusion.  Noting that Indiana's RICO Act was patterned after the federal law, the court analyzed and discussed federal and state claims jointly in Yoder Grain v. Antalis, 722 N.E.2d 840, 845 (Ind. Ct. App. 2000), *trans. not sought*.  Yoder Grain held that, to be subject to RICO liability, a person must actually be involved in directing the affairs of the alleged enterprise.  *Id*. at 846.  In the ensuing eight years, the Indiana General Assembly has acquiesced in this interpretation of the Indiana RICO Act, implying its agreement with Yoder Grain.  Absent clear direction from the legislature, I would not extend exposure to the onerous liability under Indiana's RICO Act to mere "foot soldiers" in an enterprise.

Rucker, J., concurs.