

**FILED**

Jun 04 2015, 9:21 am

**CLERK**
of the supreme court,
court of appeals and
tax court

<table>
<tr><td>

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

</td><td>

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

</td></tr>
</table>

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ashonta Kenya Jackson, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | June 4, 2015 <br><br> Court of Appeals Case No. 48A02-1409-CR-670 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Cause No. 48C04-1311-FB-2175 |

**Najam, Judge.**

## Statement of the Case

[1] Ashonta Kenya Jackson appeals his convictions for three counts of robbery, as Class B felonies; his conviction for corrupt business influence, a Class C felony;

and his adjudication as a habitual offender following a jury trial. Jackson presents the following issues for our review:

1. Whether the trial court erred when it denied his motion for change of judge.

2. Whether the State presented sufficient evidence to support his corrupt business influence conviction and his adjudication as a habitual offender.

3. Whether the trial court abused its discretion when it sentenced him.

We affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

On October 1, 2013, Jackson, Edwin Ricard, and Gerald Reed decided to rob the Keg N Bottle liquor store in Anderson. Ricard and Reed, who had a gun, entered the store and stole money after threatening to shoot the store's clerk. During the robbery, Jackson waited in a car down the street from the liquor store. After Ricard and Reed fled the scene, they later met up with Jackson, and they divided the stolen money three ways.

On October 17, Jackson and Ricard decided to again rob the same liquor store. Jackson gave Ricard a gun to use, and Jackson's teenaged nephew drove Ricard to the store. Ricard, alone, entered the store, pointed the gun at the clerk, and ordered the clerk to give him money. Again, Jackson waited in a second car during the robbery. Jackson and Ricard met afterwards and divided the stolen money between the two of them.

On October 28, Jackson, Ricard, and Reed planned to rob a bank in Anderson. Ricard and Reed arrived at the bank in one car, and Jackson waited in a second car while the other two men went inside. Ricard and Reed were both armed with handguns, one of which Jackson had provided. And Ricard and Reed covered their faces with bandannas and glasses. After the two men entered the bank, Reed approached a bank teller named Brittany Boyd and demanded money. While Boyd was putting money in a bag, Reed told her to hurry, and he struck her in the head with his handgun.

Meanwhile, Ricard ran to another area of the bank, pointed his handgun at another teller, Joyce Stewart, and a bank manager, Courtney Barnes, and he demanded that they give him money. Stewart and Barnes complied and gave Ricard money, including "bait money," which triggers an alarm when it is removed. Tr. at 97. Ricard and Reed then fled the scene and drove to meet Jackson at a designated location. The men divided the stolen money three ways.

Reed had borrowed the car he and Ricard used during the bank robbery from a woman named Dawn Flick. Ricard had covered the steering wheel and license plate of Flick's car with duct tape and, after the robbery, Ricard removed the duct tape before he drove off with Reed in Jackson's car. Reed contacted Flick and told her where she could find her car.

Mitchell Brinker was working on a house across the street from where the men had parked Flick's car, and he observed the men removing the duct tape and

engaging in other suspicious behavior. Brinker called police, and officers arrived a short time later to find Flick approaching her parked car. Officers advised Flick that her car had been used in a bank robbery, and Flick told the officers where they could find Reed. Officers arrested Reed and, after Brinker identified Ricard from a photo array, Ricard was eventually arrested. After his arrest, Ricard implicated Jackson in the robberies.

[9] The State charged Jackson with three counts of robbery, as Class B felonies, and one count of corrupt business influence, a Class C felony, and the State alleged that Jackson was a habitual offender. A jury found Jackson guilty as charged and adjudicated him to be a habitual offender. The trial court entered judgment of conviction accordingly and sentenced Jackson as follows: fifteen years for each Class B felony conviction, with two of the terms to run consecutively and the third to run concurrent with the others; eight years for the Class C felony conviction to run consecutively to the other sentences; and twenty-five years for the habitual offender enhancement, for a total aggregate term of sixty-three years executed. This appeal ensued.

# Discussion and Decision

### Issue One: Motion for Change of Judge

[10] Jackson first contends that the trial court erred when it denied his motion for change of judge. The law presumes that a judge is unbiased and unprejudiced. *Garland v. State*, 788 N.E.2d 425, 433 (Ind. 2003). The ruling on a motion for change of judge is reviewed under the clearly erroneous standard. *Id.* Reversal

will require a showing which leaves us with a definite and firm conviction that a mistake has been made. *Sturgeon v. State*, 719 N.E.2d 1173, 1182 (Ind. 1999).

[11] The trial judge presiding over Jackson's trial "had appeared as prosecutor in one of the cases relied on to establish [Jackson]'s habitual offender status." Appellant's Br. at 9. Thus, Jackson alleged in his motion for change of judge that the trial judge's "continued involvement" in the trial "create[d] in reasonable minds a perception that the judge's ability to carry out its responsibilities in this case with impartiality [wa]s impaired." Appellant's App. at 42. On appeal, Jackson "acknowledges that[,] in the past[,] courts in this state have held that recusal was not necessary under facts similar to those in this case." Appellant's Br. at 14. Jackson invites us to "reconsider" those cases and hold that the trial court erred here. *Id.* We reject that invitation.

[12] In *Dishman v. State*, 525 N.E.2d 284 (Ind. 1988), the defendant appealed his convictions and adjudication as a habitual offender. Dishman alleged in relevant part that the trial court erred when it denied his motion for a change of judge because, "[i]n his capacity as prosecuting attorney, [the trial judge] had prosecuted appellant in the two cases on which the habitual offender charge was based." *Id.* at 285. Our supreme court rejected that contention and held as follows:

> In this situation, the trial judge would have erred had there been any factual contesting of the prior convictions. However, such was not the case here. Once the certified convictions were presented to the jury, the determination of the status as habitual criminal was virtually a foregone conclusion. There is no indication in this situation that the trial judge's personal

knowledge of appellant's prior convictions in any way played a part in the jury's determination as to the status of habitual offender.

*Id.*

[13] Here, likewise, Jackson did not contest the evidence of his prior convictions supporting the habitual offender adjudication, including the evidence of a perjury conviction, which is the one in which the trial judge in this case was involved as a prosecutor. Jackson did not object to the admission of the certified records of the prior convictions, and, in his closing argument, his trial counsel conceded that Jackson had been convicted of the two prior felonies as alleged. Accordingly, as in *Dishman*, "[t]here is no indication . . . that the trial judge's personal knowledge of [Jackson's prior perjury conviction] in any way played a part in the jury's determination as to the status of habitual offender." *Id.* The trial court did not err when it denied Jackson's motion for change of judge. *See also Sisson v. State*, 985 N.E.2d 1, 19 (Ind. Ct. App. 2012).

### Issue Two: Sufficiency of the Evidence

[14] Jackson contends that the State presented insufficient evidence to support either his corrupt business influence conviction or his adjudication as a habitual offender. Our standard of review for sufficiency of the evidence claims is well-settled. *Tobar v. State*, 740 N.E.2d 109, 111 (Ind. 2000).

> In reviewing the sufficiency of the evidence, we examine only the probative evidence and reasonable inferences that support the verdict. We do not assess witness credibility, nor do we reweigh

the evidence to determine if it was sufficient to support a conviction. Under our appellate system, those roles are reserved for the finder of fact. Instead, we consider only the evidence most favorable to the trial court ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt.

*Pillow v. State*, 986 N.E.2d 343, 344 (Ind. Ct. App. 2013) (citations omitted) (internal quotation marks omitted).

### *Corrupt Business Influence*

[15] To prove corrupt business influence, the State was required to show that Jackson, through a pattern of racketeering activity, knowingly or intentionally acquired or maintained, either directly or indirectly, an interest in or control of United States currency from multiple armed robberies. Ind. Code § 35-45-6-2(2). "Racketeering activity" means, in relevant part, to commit, to attempt to commit, to conspire to commit a violation of, or to aid and abet in a robbery. I.C. § 35-45-6-1(e). A "pattern of racketeering" activity means engaging in at least two incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents. I.C. § 35-45-6-1(d). Further, "the incidents are a pattern of racketeering activity only if at least one (1) of the incidents occurred after August 31, 1980, and if the last of the incidents occurred within five (5) years after a prior incident of racketeering activity." *Id.*

[16] Jackson contends that the State was also required to prove that his criminal acts posed a threat of continued criminal activity, but that the State presented no such evidence. While Indiana's statute for corrupt business influence does not expressly include an element of continuing the criminal conduct into the future, the statute is patterned after the federal RICO statute, and we look to relevant federal case law for guidance in interpreting the Indiana version of the statute. *Waldon v. State*, 829 N.E.2d 168, 176 (Ind. Ct. App. 2005), *trans. denied*. In *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989), the United States Supreme Court observed that, with respect to federal RICO law, "to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." (Emphasis added). And the Court explained that

> "[c]ontinuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *See Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 39 (CA3 1987). It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where what must be continuous, RICO's predicate acts or offenses, and the relationship these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. *Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the*

*threat of continuity is demonstrated*.

*Id.* at 241-42 (emphasis added).

[17] In *Waldon*, the defendant was convicted of five counts of burglary, five counts of theft, and corrupt business influence related to offenses committed "within the span of a few days[.]" 829 N.E.2d at 175. On appeal, the defendant contended that the State had presented insufficient evidence to support his corrupt business influence conviction because there was no evidence that he had planned to continue his crime spree into the future. We acknowledged the continuity element as set out in *H.J., Inc.* and held as follows:

> In this case, Waldon and his cohorts were apprehended before the crime spree could cover a substantial period of time. Nonetheless, the facts that it extended for a short time and there was no direct evidence of planning for future crimes are not fatal. *The pattern which was developing shows regular, almost daily, attempts at burglary. The testimony from trial reveals a plan for ongoing criminal activity as once the conduct was set in motion, it only took a phone call to organize the group and get them into action*. From this evidence, the jury could infer that the crimes were to continue into the future.

*Id.* at 177 (emphasis added).

[18] Again, there are two ways to prove the continuity requirement. The State can show that the defendant committed a series of related predicates extending over a substantial period of time, or the State can show that the defendant committed a series of related predicates over the course of a few weeks or months. *H.J., Inc.*, 492 U.S. at 242. In the latter case, which applies here,

"liability depends on whether the *threat* of continuity is demonstrated." *Id.* (emphasis original). That is, the State must demonstrate that the defendant intended for the racketeering activity to continue into the future at the time he was arrested. *Id.*

[19] Here, the State did not argue or present evidence to show that there was any threatened future criminal conduct related to the robberies Jackson had committed. Still, on appeal the State maintains that

> the evidence in this case permits a reasonable inference that if [Jackson] and his accomplices had not been identified and apprehended quickly after the bank robbery, their criminal activity threatened to continue into the future. They were a well-organized group employing sophisticated means to regularly perpetrate armed robberies of businesses in Anderson. As in *Waldon*, the evidence was sufficient to support the jury's determination that [Jackson] engaged in a pattern of racketeering activity.

Appellee's Br. at 23.

[20] We decline the State's invitation to analogize this case to *Waldon*. First, in *Waldon* the defendant committed five burglaries over the course of a few days. Here, Jackson committed three burglaries over the course of a month. Second, and significantly, the State does not direct us to evidence in the record showing that Jackson and his cohorts, like the defendants in *Waldon*, were well organized and had any particular method to carry out the burglaries, like a simple "phone call" to "get them into action." *Waldon*, 829 N.E.2d at 177. While the State characterizes Jackson, Ricard, and Reed as "a well-organized

group employing sophisticated means" to commit the robberies, the State does not point to any evidence to support that characterization. Appellee's Br. at 23. Indeed, under the State's characterization of these facts, virtually any series of robberies would constitute a pattern of racketeering activity. We hold that the evidence is insufficient to support an inference that Jackson intended to continue robbing businesses in Anderson into the future, and we reverse his conviction for corrupt business influence. *Cf. Kollar v. State*, 556 N.E.2d 936, 941 (Ind. Ct. App. 1990) (holding evidence sufficient to support corrupt business influence conviction given the lengthy duration of coin shop owner's pyramid scheme and defendant's stated intention to continue in the coin business), *trans. denied*.

[21] Finally, we reject the State's contention that Indiana's definition of "pattern of racketeering activity" is significantly broader than the federal definition and that, therefore, we should give "the language of the Indiana statute meaning independent of Federal authority" and disregard altogether future criminality. Appellee's Br. at 19, 21. In support of that contention, the State cites to *Keesling v. Beegle*, 880 N.E.2d 1202 (Ind. 2008). In *Keesling*, our supreme court addressed whether liability under the Indiana RICO Act extends only to persons who direct racketeering activity (the rule under the Federal RICO Act) or extends below the managerial or supervisory level to a racketeering enterprise's "foot soldiers" as well. *Id.* at 1203.

[22] The provision of the federal Act addressed in *Keesling* provides in relevant part that it shall be unlawful for any person employed by or associated with any

enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 U.S.C. § 1962(c). And the Indiana statute provides in relevant part that a person who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity commits corrupt business influence. I.C. § 35-45-6-2(3). In *Keesling*, our supreme court stated that

> [t]he most important difference between the language of these two statutes is that the Federal Act imposes liability on a person who "conduct[s] or participate[s] . . . in the conduct of such enterprise's affairs" while the Indiana Act imposes liability on a person who "conducts or otherwise participates in the activities of that enterprise."

880 N.E.2d at 1206. The court stated further that,

> [b]y imposing liability not just on a person who "conducts . . . the activities" of a racketeering enterprise but also on a person who "otherwise participates in the activities" of a racketeering enterprise, we think it clear that scope of liability under the Indiana Act is broader than under the Federal Act.

*Id.* And the court held that, "[b]ecause the Indiana Act uses language significantly broader than that of the Federal Act, we conclude that it imposes RICO liability both on persons at and below a racketeering enterprise's managerial or supervisory level." *Id.* at 1203.

[23]     Here, the State maintains that Indiana's definition of pattern of racketeering activity uses language significantly different than that in the federal definition and, therefore, we should not read into the Indiana statute any requirement to prove that a defendant's criminal acts pose a threat of continued criminal activity.  The federal statute defines "pattern of racketeering activity" as "requir[ing] at least two acts of racketeering activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5).  And, again, our statute provides as follows:

> "Pattern of racketeering activity" means engaging in at least two incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents.  However, the incidents are a pattern of racketeering activity only if at least one of the incidents occurred after August 31, 1980, and if the last of the incidents occurred within five years after a prior incident of racketeering activity.

I.C. § 35-45-6-1(d).

[24]     The State contends that

> [t]he plain language of the statute indicates that the Indiana General Assembly intended for the definition of a "pattern" to focus on the relationship between the predicate offenses regarding the intent, methods, participants, and like circumstances.  They also set narrower temporal limitations than

> in the Federal statute, requiring the incidents of racketeering activity occur within five rather than ten years of one another. However, there is no indication in the statute that the General Assembly wished to impose a separate element punishing future criminality as the Supreme Court has read into the Federal statute. While this Court has previously relied on the Supreme Court's interpretation of the Federal definition when applying the Indiana statute, it has not addressed the differing language used in the two statutes when doing so.

Appellee's Br. at 21.

[25] We acknowledge that the plain language of the federal statute differs from that of the Indiana statute to the extent that the federal statute does not explicitly require that the predicates be related in any way. But while 18 U.S.C. Section 1961(5) does not include language requiring that the two predicates "have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents," I.C. § 35-45-6-1(d), federal case law holds that the same factors are required under the federal statute to prove a pattern of racketeering activity. In particular, in *H.J., Inc.*, the Supreme Court, in defining "the element of relatedness" between predicates in the context of the federal RICO statute, took "guidance" from another provision of the Organized Crime Control Act of 1970 which provided that "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 492 U.S. at 239-40. Thus, while the plain text of the Indiana statute differs from that of the federal

statute, both require proof of a relationship between the predicate offenses regarding the intent, methods, participants, and like circumstances. And it would appear that our legislature patterned the statutory definition of pattern of racketeering activity after both 18 U.S.C. Section 1961(5) and the federal Organized Crime Control Act of 1970. *See id.* Finally, we are not persuaded that the five year difference in the temporal requirement of the two statutes is significant on this question.

[26] Again, because the statute is patterned after federal law, we look to relevant federal case law for guidance in interpreting the Indiana version of the statute.[1] *Waldon*, 829 N.E.2d at 176. We reject the State's invitation to disregard federal case law on this issue, and we hold that, to prove corrupt business influence, the State must show that the defendant's criminal acts pose a threat of continued criminal activity. Because the State presented insufficient evidence to prove any such threat here, we reverse Jackson's conviction for corrupt business influence.[2]

---

[1] We disagree with the dissent's assertion that we are improperly engrafting new words onto the corrupt business influence statute. Rather, again, because our statute is patterned after the federal statute, we follow federal case law to aid in our interpretation of the Indiana statute.

[2] This court has twice addressed a defendant's challenge to the sufficiency of the evidence on the continuity element to support corrupt business influence convictions, and in neither case is it apparent that the State challenged the applicability of that element under Indiana law. *See Waldon*, 829 N.E.2d at 177; *Kollar*, 556 N.E.2d at 941.

## *Habitual Offender Adjudication*

[27]    To establish that Jackson was a habitual offender, the State was required to show that he had "accumulated two (2) prior unrelated felony convictions." Ind. Code § 35-50-2-8. "To be 'unrelated,' the defendant must have committed the second felony after being sentenced for the first and must have been sentenced for the second felony prior to committing the current felony . . . ." *Walker v. State*, 988 N.E.2d 1181, 1186-87 (Ind. Ct. App. 2013), *trans. denied*.

[28]    The State presented sufficient evidence to demonstrate that Jackson was a habitual offender. In particular, the State admitted into evidence certified records of Jackson's prior convictions for perjury, a Class D felony, and intimidation, as a Class C felony. Jackson did not object to the admission of those exhibits. Still, on appeal, Jackson contends that the State failed to prove that he was the same Ashonta Kenya Jackson identified in those records.

[29]    While certified copies of judgments or commitments containing the same or similar name as the defendant may be introduced to prove the commission of prior felonies, there must be other supporting evidence to identify defendant as the same person named in the documents. *Baxter v. State*, 522 N.E.2d 362, 365 (Ind. 1988). This proof of identity may be in the form of circumstantial evidence. *Id.* A sufficient connection between the documents and the defendant is made if the evidence yields logical and reasonable inferences from which the trier of fact may determine it was indeed the defendant who was convicted of the two felonies alleged. *Id.*

Here, the State presented the following evidence to prove that Jackson was the same person convicted of perjury as indicated in the certified records submitted: Jackson's unique name, date of birth, and social security number, and the records indicated that Jackson is a black male with black hair and brown eyes. And the records submitted to prove the intimidation conviction included Jackson's unique name, date of birth, and also described Jackson as a black male with black hair and brown eyes. Finally, and moreover, in his closing argument, defense counsel acknowledged that Jackson had been convicted of the two prior felonies as alleged. The State presented sufficient evidence to support Jackson's adjudication as a habitual offender.

### Issue Three: Sentencing

Jackson contends that the trial court abused its discretion when it sentenced him. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration,

or the reasons given are improper as a matter of law . . . .

> [However, b]ecause the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a sentence, . . . a trial court cannot now be said to have abused its discretion in failing to "properly weigh" such factors.

*Id.* at 490-91.

[32] Here, the trial court identified three aggravators, namely, "1) Serious criminal history, 2) Engaged in a pattern of conspiracy to rob people, and 3) Violated prior court supervision." Appellant's App. at 6. And the trial court imposed enhanced sentences on each of Jackson's convictions. Jackson contends that the trial court abused its discretion when it identified as aggravating Jackson's "pattern of behavior of engaging in conspiracy to commit robberies[.]" Appellant's Br. at 22. Jackson maintains that that aggravator is a factor constituting a material element of the crime of corrupt business influence and cannot, therefore, be considered an aggravating circumstance in determining his sentence. *Id.* (citing *McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007)). The State counters that that aggravator is proper because it merely describes the "particular circumstances of the crimes that could support sentences above the advisory." Appellee's Br. at 28.

[33] Generally, the "nature and circumstances" of a crime is a proper aggravating circumstance. *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001) (quoting *Thacker v. State*, 709 N.E.2d 3, 10 (Ind. 1999)). Even if the trial court relied on an improper factor under this aggravating circumstance, the sentence may be

upheld so long as "[t]he remaining components of that aggravator were proper." *Id.* (quoting *Angleton v. State*, 714 N.E.2d 156, 160 (Ind. 1999)).

[34] At sentencing, the trial court stated the following: "You engaged in a pattern [of] behavior with your co-defendants, which was an organized conspiracy to rob people, with firearms. That kind of behavior gets people killed. And for a little bit of financial gain you were willing to put a lot of other people's lives in jeopardy." Tr. at 690. The first sentence of the court's statement appears to mirror the racketeering activity element of corrupt business influence, which requires that the defendant conspire to commit a violation of, or aiding and abetting in a robbery. Ind. Code § 35-45-6-1(e). But, after the first sentence, the remaining components of the aggravator are proper. Thus, the trial court did not abuse its discretion when it identified the challenged aggravator.[3] *McCann*, 749 N.E.2d at 1120. Finally, even if we were to disregard the challenged aggravator, Jackson's extensive criminal history, including probation violations, without more, would support his enhanced sentence. *See, e.g.*, *Bacher v. State*, 722 N.E.2d 799, 803 (Ind. 2000) (holding when a sentencing court improperly applies an aggravating circumstance, but other valid aggravating circumstances do exist, a sentence enhancement may still be upheld).

[35] Jackson also contends that the trial court abused its discretion when it did not identify as mitigating the fact that "he spent a 'significant amount of time as a

---

[3] While we reverse Jackson's corrupt business influence conviction on appeal, we note that the evidence supports the facts and circumstances of the offenses as described by the trial court at sentencing.

law abiding citizen[.]'" Appellant's Br. at 22 (quoting Tr. at 687). The determination of mitigating circumstances is within the trial court's discretion. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* A trial court does not err in failing to find a mitigating factor where that claim is highly disputable in nature, weight, or significance. *Id.* An allegation that a trial court abused its discretion by failing to identify or find a mitigating factor requires the defendant on appeal to establish that the mitigating evidence is significant and clearly supported by the record. *Id.*

[36] Considering Jackson's criminal history and his admitted "past gang membership," Appellant's App. at 95, we are not persuaded that Jackson's claim that he lived as a law-abiding citizen for an eight-year period leading up to the instant offenses is significant and clearly supported by the record. Jackson was born in 1979. His juvenile history includes five true findings, including two batteries and one instance of resisting law enforcement. And his criminal history includes three felony convictions, including intimidation with a deadly weapon. We hold that the trial court did not abuse its discretion when it sentenced Jackson.

[37] That being said, as the State points out, the trial court erred when it did not attach Jackson's habitual offender enhancement to one of his felony convictions. A habitual offender finding does not constitute a separate crime

nor result in a separate sentence, but rather results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Greer v. State*, 680 N.E.2d 526, 527 (Ind. 1997). In the event of simultaneous multiple felony convictions and a finding of habitual offender status, trial courts must impose the resulting penalty enhancement upon only one of the convictions and must specify the conviction to be so enhanced. *Id.* Here, because the trial court did not specify which of Jackson's convictions was enhanced by his habitual offender adjudication, we remand and instruct the trial court to revise the sentencing statement to reflect which conviction is enhanced.

## *Conclusion*

[38] The trial court did not err when it denied Jackson's motion for change of judge. The State presented insufficient evidence to support Jackson's corrupt business influence conviction, and we reverse that conviction. But the State presented sufficient evidence to support his habitual offender adjudication. The trial court did not abuse its discretion when it sentenced Jackson. But we remand and instruct the trial court to revise the sentencing order to indicate which conviction is enhanced by Jackson's habitual offender adjudication.

[39] Affirmed in part, reversed in part, and remanded with instructions.

Friedlander, J., concurs.

Baker, J., concurs in part and dissents in part with separate opinion.

| | |
|---|---|
| Ashonta Kenya Jackson, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 48A02-1409-CR-670 |
| v. | |
| State of Indiana, | |
| *Appellees-Plaintiff.* | |

**Baker, Judge, concurring in part and dissenting in part.**

I respectfully dissent from the majority regarding the sufficiency of the evidence supporting Jackson's conviction for corrupt business influence. As the majority notes, Indiana Code section 35-45-6-2(2) provides that a person commits corrupt business influence if he, "through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise." A pattern of racketeering activity "means engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of

commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents." I.C. § 35-45-6-1.

[41] The majority concludes that there is insufficient evidence supporting a conclusion that the racketeering activity amounts to or poses a threat of continued criminal activity—an element that appears nowhere in the statute defining the crime. As noted by the majority, however, our Supreme Court has noted the many differences between the Indiana act and the federal act. *See Keesling*, 880 N.E.2d at 1203-06 (emphasizing that the Indiana statute "uses language significantly broader than" its federal counterpart).

[42] In writing a continuity requirement into the federal RICO statutes, the United States Supreme Court focused heavily on legislative history and Congressional intent. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238-39 (1989). There is no such legislative history to examine in Indiana. And the General Assembly has had the benefit of the United States Supreme Court's opinion in *H.J.* for over two decades but has never elected to adopt the continuity requirement announced in that case.

[43] It is axiomatic that when engaging in statutory interpretation, "Courts may not 'engraft new words' onto a statute or add restrictions where none exist." *Kitchell v. Franklin*, 997 N.E.2d 1020, 1026 (Ind. 2013) (quoting *State ex rel. Monchecourt v. Vigo Cir. Ct.*, 240 Ind. 168, 162 N.E.2d 614, 615 (1959)). I believe that to reverse a conviction for failure to prove an element that is nowhere to be found in the statute defining the crime requires us to engraft new words onto a

statute. I do not believe it is our place to do so. As a result, I would affirm Jackson's conviction for corrupt business influence. In all other respects, I concur with the majority.