ATTORNEY FOR APPELLANT
David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Angela N. Sanchez
Deputy Attorney General
Indianapolis, Indiana

---

# In the
# Indiana Supreme Court



FILED

Mar 02 2016, 1:44 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 48S02-1509-CR-554

ASHONTA KENYA JACKSON,

*Appellant (Defendant),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff).*

---

Appeal from the Madison Circuit Court 4, No. 48C04-1311-FB-2175
The Honorable David A. Happe, Judge

---

On Petition to Transfer from the Indiana Court of Appeals, No. 48A02-1409-CR-670

---

**March 2, 2016**

**Rush, Chief Justice.**

Obtaining a conviction under the Indiana Racketeer Influenced and Corrupt Organizations (RICO) Act requires the State to prove a defendant was involved in a "pattern of racketeering activity." Here, Jackson was convicted of C-felony "corrupt business influence" (the formal name of the Indiana RICO offense) for his involvement in three armed robberies during the course of a month. He argues the State failed to prove the robberies constituted a "pattern of racketeering activity" because there was insufficient evidence that they amounted to or posed a threat of *continued* criminal activity.

We recognize that the United States Supreme Court has written a continuity requirement into "pattern of racketeering activity" as it appears in the Federal RICO Act. But we also recognize that the Indiana RICO Act differs significantly from its federal counterpart, including in its definition of that particular phrase. The plain language of Indiana's definition does not contain a continuity element, and well-established rules of construction preclude courts from engrafting an additional element onto the statute. Accordingly, continuity is not required for a corrupt business influence conviction.

That being said, continuity remains a relevant consideration, as the plain language of Indiana's definition of "pattern of racketeering activity" *does* require the State to prove that the incidents of criminal conduct were "not isolated." Here, a reasonable fact-finder could draw that inference from the State's evidence that Jackson orchestrated the criminal operation and that the robberies' planning and coordination became increasingly sophisticated. We therefore affirm his conviction for corrupt business influence.

**Facts and Procedural History**

Beginning on October 1, 2013, Defendant Ashonta Jackson was involved in three armed robberies in Anderson, Indiana. On that date, he enlisted Edwin Ricard and Gerald Reed to rob a liquor store. Reed was armed with a gun. Jackson waited in a car down the street, while Ricard and Reed entered the store, threatened to shoot the clerk, and stole money. After the robbery, the two fled the scene and later met with Jackson to divide the cash.

On October 17, Jackson enlisted Ricard to rob the same liquor store again. This time, Jackson recruited his teenage nephew to drive Ricard to the store, and Jackson lent Ricard a gun. Ricard entered the store alone, threatened the clerk, and stole money. As before, Jackson waited down the street in a second car and later met with Ricard to split the proceeds.

On October 28, Jackson enlisted Ricard and Reed to rob a bank. This time, intending to distract law enforcement, Jackson instructed Ricard to phone in a bomb threat to a local elementary school. Again, Jackson waited down the street while Ricard and Reed entered the bank. Both were armed, and Jackson had again lent Ricard a gun. During the course of this robbery, Reed pistol-whipped a teller in the head and ordered her to place money in a bag, while Ricard pointed a gun

at two other employees and demanded money. The two fled, later meeting with Jackson to divide the cash.

Reed and Ricard were both apprehended shortly after the bank robbery, and Ricard eventually implicated Jackson, who was then arrested. Jackson was charged with three counts of B-felony robbery and one count of C-felony corrupt business influence. The State also alleged that Jackson was a habitual offender.

A jury convicted Jackson on all counts and adjudicated him a habitual offender. The trial court sentenced him to an aggregate term of sixty-three years executed. Jackson appealed.

Among other arguments,[1] Jackson asserted that the State presented insufficient evidence to support his conviction for corrupt business influence. Specifically, Jackson argued that the State failed to prove that his actions posed a threat of "continued" criminal activity. A majority of the Court of Appeals agreed and reversed Jackson's corrupt business influence conviction. Jackson v. State, 33 N.E.3d 1173, 1179–83 (Ind. Ct. App. 2015). Judge Baker dissented, contending that a continuity element "appears nowhere in the statute defining the crime." Id. at 1186 (Baker, J., dissenting).

Both Jackson and the State sought transfer. We denied Jackson's petition but granted the State's. For essentially the reasons Judge Baker identified, we now affirm the trial court.

**Standard of Review**

Before we can determine whether sufficient evidence supports Jackson's conviction, we must interpret the controlling statute. This involves two distinct standards of review.

---

[1] Jackson also argued on direct appeal that the trial court erred when it denied his motion for change of judge; that the State presented insufficient evidence to establish that he was a habitual offender; and that the trial court abused its discretion when it sentenced him. The Court of Appeals unanimously disagreed and affirmed the trial court on those matters. Jackson v. State, 33 N.E.3d 1173, 1178–79, 1183–86 (Ind. Ct. App. 2015). The Court of Appeals, however, did note that the trial court failed to specify which of Jackson's convictions was enhanced by the habitual offender adjudication and remanded and instructed the trial court to revise the sentencing order accordingly. Id. at 1185–86. As to those issues, we summarily affirm the Court of Appeals. Ind. Appellate Rule 58(A)(2).

First, we must decide whether proving a "pattern of racketeering activity" under the Indiana RICO Act requires the State to show that the criminal incidents amount to or pose a threat of *continued* criminal activity. This is a matter of statutory interpretation, which presents a pure question of law we review de novo. E.g., Gardiner v. State, 928 N.E.2d 194, 196 (Ind. 2010).

Next, we must determine whether sufficient evidence exists to support a conviction under the statute as interpreted. When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. Morgan v. State, 22 N.E.3d 570, 573 (Ind. 2014). We neither assess witness credibility nor reweigh the evidence, and we will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Willis v. State, 27 N.E.3d 1065, 1066 (Ind. 2015).

**Discussion and Decision**

**I. The Indiana RICO Act's Definition of "Pattern of Racketeering Activity" Does Not Contain a Continuity Element, but It Does Require the State to Prove that the Criminal Incidents Were "Not Isolated."**

Ten years after Congress enacted the Federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961–1968 (2012), Indiana enacted its own RICO Act, which is otherwise known as the Indiana Corrupt Business Influence Act, Ind. Code §§ 35-45-6-1 to -2 (2008). See Keesling v. Beegle, 880 N.E.2d 1202, 1205 & n.5 (Ind. 2008). While the Indiana RICO Act and its federal counterpart share similarities, there are notable differences too. This case requires us to examine one of these differences—particularly, how the phrase "pattern of racketeering activity" is used within the two Acts.

The Federal RICO Act does not define "pattern of racketeering activity" but simply states the bare minimum of what a pattern "*requires*"—two acts of racketeering activity within a specified timeframe. 18 U.S.C. § 1961(5) (emphasis added). Because the Federal RICO Act did not provide a complete definition of the term, the United States Supreme Court turned to legislative history and interpreted the statute as also requiring relatedness and continuity. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 237–40 (1989).

By contrast, the Indiana RICO Act's definition of "pattern of racketeering activity" is complete and self-contained. Its plain language states what that phrase "*means*" and explicitly lists what types of relationships between criminal incidents suffice to prove a "pattern of racketeering

4

activity." I.C. § 35-45-6-1(d) (emphasis added). Because the plain language of that definition does not expressly contain an element of continuity, the State is not required to prove that racketeering predicates amount to or pose a threat of continued criminal activity. But we also find that the plain language requires the State to prove that the incidents were "not isolated," rendering "continuity" a relevant consideration. Our detailed analyses of these issues follow.

A. *There is no continuity element found in the plain language of the Indiana RICO Act's definition of "pattern of racketeering activity."*

To convict a defendant of corrupt business influence, the State must prove a violation of one of the three subsections of Indiana Code section 35-45-6-2[2]—all three of which require a showing that the defendant engaged in a "pattern of racketeering activity." That term is defined as follows:

> "Pattern of racketeering activity" means engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents. However, the incidents are a pattern of racketeering activity only if at least one (1) of the incidents occurred after August 31, 1980, and if the last of the incidents occurred within five (5) years after a prior incident of racketeering activity.

I.C. § 35-45-6-1(d). Racketeering activities include robbery. Id. § 35-45-6-1(e)(10).

On direct appeal, Jackson asserted the evidence was insufficient to support his corrupt business influence conviction because the State did not prove one element of "pattern of racketeering activity." Specifically, Jackson argued that a "pattern of racketeering activity"

---

[2] Indiana Code section 35-45-6-2 provides as follows:

A person:

> (1) who has knowingly or intentionally received any proceeds directly or indirectly derived from a pattern of racketeering activity, and who uses or invests those proceeds or the proceeds derived from them to acquire an interest in property or to establish or to operate an enterprise;
>
> (2) who through a pattern of racketeering activity, knowingly or intentionally acquires or maintains, either directly or indirectly, an interest in or control of property or an enterprise; or
>
> (3) who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity;

commits corrupt business influence, a Class C felony.

requires proof of *continuity*—that is, that the string of robberies amounted to or posed a threat of continued criminal activity—and the State failed to make that showing.

A majority of the Court of Appeals recognized that the Indiana definition of "pattern of racketeering activity" does not expressly include an element of continuity. Jackson, 33 N.E.3d at 1179. But the majority nevertheless determined that such a continuity requirement exists, relying primarily on a United States Supreme Court case interpreting "pattern of racketeering activity" as it appears in the Federal RICO Act. Id. at 1179–80 (citing H.J., 492 U.S. 229 (1989)). The majority also referenced two prior Indiana Court of Appeals cases that had adopted a continuity element into the Indiana RICO Act's definition of "pattern of racketeering activity." Id. at 1179–81 (citing Waldon v. State, 829 N.E.2d 168 (Ind. Ct. App. 2005), trans. denied; Kollar v. State, 556 N.E.2d 936 (Ind. Ct. App. 1990), trans. denied). Ultimately finding that the State presented no evidence of continuity, the Court of Appeals majority reversed Jackson's conviction for corrupt business influence. Id. at 1183.

Judge Baker dissented on the continuity issue, arguing that statutory construction principles prohibit a court from "engraft[ing] new words" onto a statute and that the majority added "an element that is nowhere to be found in the statute defining the crime." Id. at 1186 (Baker, J., dissenting). The dissent further contended that while the United States Supreme Court relied heavily on legislative history when writing a continuity requirement into the Federal RICO statutes, no such legislative history exists to examine in Indiana. Id. We agree.

Our analysis begins with a recitation of some well-established statutory construction rules. When construing a statute, our primary goal is to ascertain the legislature's intent. Walczak v. Labor Works–Ft. Wayne LLC, 983 N.E.2d 1146, 1154 (Ind. 2013). To discern that intent, we look first to the statutory language and give effect to the plain and ordinary meaning of statutory terms. Pierce v. State, 29 N.E.3d 1258, 1265 (Ind. 2015). Where the language is clear and unambiguous, there is "no room for judicial construction." St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele, 766 N.E.2d 699, 704 (Ind. 2002). In other words, when the meaning of the words is plain on paper, we need not resort to other rules of statutory construction to divine intent. E.g., id.

Viewing the relevant statutory language through the lens of those oft-repeated principles, we conclude that "pattern of racketeering" contains no continuity element. The plain language of

the statute commands this interpretation—"continuity" or a variation of the word appears nowhere in Indiana's definition of "pattern of racketeering activity." Arguably, we could end our analysis here, with a straightforward pronouncement that the statute simply means what it says. But important points that bolster this conclusion are also worth mentioning.

First, a close look at the United States Supreme Court opinion of <u>H.J.</u>—which ultimately adopted a continuity element into "pattern of racketeering activity" under the Federal RICO Act— reveals why its approach does not apply to the Indiana RICO Act. At the outset, we recognize that in construing a state statute, we give consideration to the interpretation of its federal counterpart. <u>See</u> <u>Ind. Civil Rights Comm'n v. Sutherland Lumber</u>, 182 Ind. App. 133, 140–41, 394 N.E.2d 949, 954 (1979). But the persuasive value of such an interpretation diminishes considerably when the federal language contains significant variations from our own. Such is the case here.

The Federal RICO Act describes "pattern of racketeering activity" as follows:

> "[P]attern of racketeering activity" *requires* at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]

18 U.S.C. § 1961(5) (emphasis added).

The <u>H.J.</u> Court observed that by using the word "requires," the Federal RICO Act does not provide a definition of "pattern of racketeering activity" but rather states "a minimum necessary condition for the existence of such a pattern." <u>H.J.</u>, 492 U.S. at 237. In other words, "Section 1961(5) concerns only the minimum *number* of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern *beyond* simply the number of predicate acts involved." <u>Id.</u> at 238. To identify that "something . . . beyond," the Court turned to legislative history to interpret the term. <u>Id.</u> at 238–41. Based on its examination of this history, the Court concluded that a "pattern of racketeering activity" has two distinct requirements—relatedness and continuity. <u>Id.</u> at 239. In other words, a "prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." <u>Id.</u>

But unlike the Federal RICO Act, the Indiana RICO Act uses the word "means" in its definition and includes a specific and comprehensive list of how predicates could be related to

establish a "pattern of racketeering activity." This "requires" versus "means" distinction is significant. In fact, the H.J. Court found it noteworthy that the Federal RICO Act used "requires" in describing a "pattern of racketeering activity" but used "means" in various other definitions:

> Unlike other provisions in § 1961 that tell us what various concepts used in the Act "mean," 18 U.S.C. § 1961(5) says of the phrase "pattern of racketeering activity" only that it "requires at least two acts of racketeering activity, one of which occurred after [October 15, 1970,] and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."

H.J., 492 U.S. at 237 (alteration in original). And the Court had previously recognized this important linguistic difference between "means" and "requires" as used in the Federal RICO Act:

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern "*requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient.

Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n.14 (1985).

Notably, several other jurisdictions that have confronted this issue have concluded that because their particular RICO Acts use the term "means" to define "pattern of racketeering activity," the definitions are "complete and self-contained." E.g., People v. Chaussee, 880 P.2d 749, 757 (Colo. 1994) ("We agree with the prosecution that the [Colorado Organized Crime Control Act] definition of 'pattern of racketeering activity' is complete and self-contained."); Comput. Concepts, Inc. v. Brandt, 801 P.2d 800, 807 (Or. 1990) ("The use of the word 'means' implies that the legislature intended the definition to be complete and self-contained.").

We agree with both the United States Supreme Court and other jurisdictions that have noted the clear and significant distinction between "means" and "requires"—that the former renders a definition complete, whereas the latter simply states a minimum necessary condition. The Indiana General Assembly's choice in using "means" in the Indiana RICO Act's definition of "pattern of activity" was an effective departure from the language used in the federal statute. In other words, while the legislature could have expressly adopted the Federal RICO Act's "requires" language, it did not.

8

A second, and related, point worth discussing is that the United States Supreme Court turned to legislative history only *after* recognizing the federal law's unique use of the word "requires" instead of "means." In other words, examining legislative history was necessary because "[t]he text of RICO conspicuously fails anywhere to identify . . . forms of relationship or external principles to be used in determining whether racketeering activity falls into a pattern for purposes of the Act." H.J., 492 U.S. at 238.

Here, given the clear and unambiguous language used in the Indiana RICO Act to define "pattern of racketeering activity," we will not delve into legislative history. See Adams v. State, 960 N.E.2d 793, 798 (Ind. 2012). More importantly, as the dissenting opinion from the Court of Appeals noted, there simply is no legislative history of the Indiana RICO Act to examine. Jackson, 33 N.E.3d at 1186 (Baker, J., dissenting). Plus, "the General Assembly has had the benefit of the United States Supreme Court's opinion in H.J. for over two decades but has never elected to adopt the continuity requirement announced in that case." Id.

On the other hand, we must also acknowledge that two prior Court of Appeals cases have read a continuity requirement into the Indiana RICO Act's definition of "pattern of racketeering activity" and that the legislature did not alter the relevant language of the statute after those decisions, either. See Waldon, 829 N.E.2d at 177; Kollar, 556 N.E.2d at 940–41. "[I]t is well-established that a judicial interpretation of a statute . . . accompanied by substantial legislative inaction for a considerable time, may be understood to signify the General Assembly's acquiescence and agreement with the judicial interpretation." Fraley v. Minger, 829 N.E.2d 476, 492 (Ind. 2005).

But upon inspection of the two cases, it is evident that neither opinion clearly engaged in the judicial interpretation of a statute. Kollar, in part, discussed whether the State proved a "pattern of racketeering activity." 556 N.E.2d 940–41. Referencing H.J., the Kollar court stated, "[T]he United States Supreme Court concluded that proof of [a pattern of racketeering activity] required a showing that the racketeering predicates are related and they amount to or pose a threat of continued criminal activity." Id. Kollar then proceeded to analyze whether the defendant's conduct had met these relationship and continuity requirements. Id. at 941. In turn, Waldon followed Kollar in stating that a "pattern of racketeering activity" includes a continuity requirement and relied on

9

H.J. for its discussion of that issue. Waldon, 829 N.E.2d at 177 (citing Kollar, 556 N.E.2d at 940–41 and H.J., 492 U.S. at 241, 242).

What is most notable about both of these cases is what they did not do—acknowledge the significance of writing a continuity requirement into the statute when one did not explicitly exist. Kollar never stated that it was interpreting the phrase "pattern of racketeering activity" as it appears in the Indiana RICO Act (and consequently did not recite any principles of statutory interpretation). It rather adopted the federal interpretation without question, and Waldon simply followed Kollar as precedent. We cannot say the legislature acquiesced and agreed to a continuity requirement when neither Kollar nor Waldon signaled that it was engaging in statutory interpretation.

Further, two post-Kollar Court of Appeals cases discuss "pattern of racketeering activity" in the context of sufficiency of the evidence without any mention of a continuity element. See Long v. State, 867 N.E.2d 606, 612–14 (Ind. Ct. App. 2007); Lee v. State, 569 N.E.2d 717, 720–21 (Ind. Ct. App. 1991), trans. denied. These inconsistencies bolster our conclusion that there was no clear indication to the legislature that judicial interpretation had written a continuity element into the definition of "pattern of racketeering activity." And we stress again that the hierarchy of interpretive principles moots the concept of legislative acquiescence—the clear statutory language makes it unnecessary to resort to other statutory construction rules. E.g., Adams, 960 N.E.2d at 798. Ultimately, to the extent that Kollar and Waldon hold that the Indiana RICO Act's definition of "pattern of racketeering activity" contains a continuity element, they are disapproved.

>   B. *The Indiana RICO Act's definition of "pattern of racketeering activity" requires the State to prove that the crimes were "not isolated" incidents, thus rendering continuity a relevant consideration.*

Although we hold that there is no continuity element found in the definition of "pattern of racketeering activity" in the Indiana RICO Act, we believe that continuity can be an important and relevant consideration.

The Indiana RICO Act defines a "pattern" of racketeering activity as "two incidents of racketeering activity . . . that are *not isolated* incidents." I.C. § 35-45-6-1(d) (emphasis added). In

other words, the statute does not apply to sporadic or disconnected criminal acts.[3] Thus, although failure to prove continuity is not necessarily fatal to a corrupt business influence conviction—since it is not a separate element in the statute—the State must still demonstrate that the criminal incidents were in fact a "pattern" and not merely "isolated" incidents. And evidence of a degree of continuity or threat of continuity is certainly helpful in establishing the necessary "pattern."

In some cases, proving that two or more criminal incidents are not isolated will be straightforward, as the very nature of the crimes will suggest that they are not sporadic. In others, the proof may be more elusive, perhaps indicating that the State is overreaching in its attempt to obtain a conviction under the Indiana RICO Act. Ultimately, we are aware that we have not given a precise formulation on what proof will suffice, but we believe that future case law will shape and bring clarity to the concept of "not isolated."

## II. There Was Sufficient Evidence to Prove that Jackson's Armed Robberies Were "Not Isolated" Incidents.

Given what "pattern of racketeering activity" means under the Indiana RICO Act, we now address Jackson's sufficiency of the evidence argument. The State alleged, tracking the language of Indiana Code section 35-45-6-2(2), that Jackson, "through a pattern of racketeering activity, knowingly or intentionally acquired a direct interest in property: to wit United States Currency from multiple armed robberies."

Jackson does not challenge whether the State sufficiently proved the other elements; and the ample testimony of Jackson's accomplices established that Jackson intentionally, through three armed robberies, acquired the property of U.S. currency. Instead, the only dispute is whether there was sufficient evidence to prove a "pattern of racketeering activity." To resolve that question, we revisit the relevant definition:

---

[3] It is possible at first glance to misread the phrase "that are not isolated incidents" as applying only to criminal acts falling under the catch-all "otherwise interrelated by distinguishing characteristics," instead of one of the enumerated characteristics. But that view makes for an awkward operative phrase: "distinguishing *characteristics* that are not isolated *incidents*." It is much more natural to read "not isolated" as applying to the entire sentence, rendered as "two incidents of racketeering activity . . . that are not isolated incidents." And in any event, the RICO Act is a criminal statute that we construe strictly against the State. E.g., Merritt v. State, 829 N.E.2d 472, 475 (Ind. 2005) ("Penal statutes should be construed strictly against the State[.]"). Here, that means requiring the State to prove that in addition to having shared characteristics, the criminal acts were "not isolated."

"Pattern of racketeering activity" means engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents. However, the incidents are a pattern of racketeering activity only if at least one (1) of the incidents occurred after August 31, 1980, and if the last of the incidents occurred within five (5) years after a prior incident of racketeering activity.

I.C. § 35-45-6-1(d).

There is no question that racketeering activities include robbery, Id. § 35-45-6-1(e)(10); that the armed robberies shared, at a minimum, the same intent; and that the robberies took place within the mandated time frame. All that remains is whether the State proved the incidents were "not isolated." Unless no reasonable fact-finder could find this proven beyond a reasonable doubt, we must affirm Jackson's conviction for corrupt business influence. See Morgan, 22 N.E.3d at 573. We find that even though the robberies took place within a short time frame, the nature of the operation demonstrates that the crimes were not sporadic and that they would have likely continued into the future, had the operation not been interrupted by the apprehension of Jackson's accomplices.

Several specific facts are telling. Jackson was the mastermind behind each robbery, plotting the crimes and supervising his recruits. The blueprint he developed let him bear little risk, keeping a safe distance while his accomplices carried out the crimes and waiting to rendezvous with his crew until afterward. And Jackson's coordination of the crimes became more sophisticated over time. The third armed robbery involved a riskier target, a bank—and a savvier design, calling in a bomb threat to a local school in an effort to distract law enforcement. There is no indication that Jackson's goal was short-lived and that he would have stopped after the third robbery; rather, the evidence points to the opposite conclusion. In sum, we hold that the fact-finder could reasonably infer from the nature of the crimes that they were not isolated or sporadic.

**Conclusion**

We conclude that the definition of "pattern of racketeering activity" in the Indiana RICO Act does not contain a continuity element, based on the plain and unambiguous language of the statute. However, continuity is relevant to whether the incidents were "not isolated," which *is* an element of the definition. Here, there was ample evidence that Jackson's crimes were "not

isolated," and we accordingly affirm Jackson's conviction for corrupt business influence. In all other respects, including the remand to revise the sentencing order, we summarily affirm the opinion of the Court of Appeals.

Dickson, Rucker, David, and Massa, JJ., concur.

13