

FILED

Apr 13 2023, 8:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Ray Sorgdrager,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 13, 2023

Court of Appeals Case No.
22A-CR-1175

Appeal from the Allen Superior
Court

The Honorable David M. Zent,
Judge

Trial Court Cause No.
02D06-1905-F1-9

**Opinion by Chief Judge Altice**
Judge Tavitas concurs.
Judge Brown concurs in part and dissents in part with separate opinion.

**Altice, Chief Judge.**

## Case Summary

[1] Following a jury trial, Ray Sorgdrager was convicted of two counts of child molesting, one as a Level 1 felony and the other as a Level 4 felony, and sentenced to an aggregate term of forty-one years in the Indiana Department of Correction (the DOC). On appeal, Sorgdrager presents the following restated issues for review:

1.  Did the State present sufficient evidence to support the Level 1 felony conviction?

2.  Do Sorgdrager's dual convictions for child molesting violate Indiana's prohibition against double jeopardy?

3.  Is Sorgdrager's sentence inappropriate in light of the nature of his offenses and his character?

[2] We affirm.

## Facts & Procedural History

[3] G.L.'s parents, Mother and Father, divorced in 2014 when she was five years old. Mother married Sorgdrager later that year and had two daughters with him, M. and E., born over the next couple years. Sorgdrager had been a friend of the family and involved in G.L.'s life since shortly after she was born.

[4] Mother initially had primary physical custody of G.L. after the divorce. Shortly after Father married Nicole, a teacher, in July 2015, Mother and Father agreed

that G.L. should live with Father, as G.L. was starting first grade and had struggled a bit academically in kindergarten. Though the parents lived in different towns, Mother exercised regular parenting time, which included G.L. spending alternating weekends at Mother and Sorgdrager's home.

[5] On Friday, November 16, 2018, G.L., who had just turned ten years old, began her weekend visit at Mother's home. She and Mother went to a movie that night, while Sorgdrager stayed home with M. and E. G.L. and Mother did not arrive home until about midnight, so G.L. decided to sleep in the main-floor guest bedroom to not awaken three-year-old M., with whom she typically slept across the hall. Sorgdrager remained awake playing games on the computer, while Mother went to sleep in their basement bedroom.

[6] After everyone else was asleep, Sorgdrager entered the dark guest bedroom wearing a t-shirt and boxers and kissed G.L. twice on the lips. G.L. "kind of just froze" and pretended to still be asleep. *Transcript Vol. 2* at 184. Sorgdrager then moved her shirt, lifted up her sports bra, and started licking her chest. He then left the room briefly.

[7] Upon his return, Sorgdrager used his finger to trace the front seams of the shorts G.L. was wearing. He then put his hand under her shorts, over her underwear, before removing his hand to lick his finger. After licking his finger, Sorgdrager put his hand back under her shorts and, this time, inside her underwear and then "start[ed] rubbing [her] private area with his finger." *Id.* at 186. He licked

his hand again and then placed his finger "inside" of her "private," which was "painful" for G.L. *Id*. at 187-88. He did this more than once. G.L. was scared but she tried to stay still.

[8] Sorgdrager proceeded to cover G.L.'s face with a knitted blanket and then put her hand on his penis. He "made [her] squeeze it" by placing his hand over hers. *Id*. at 186. His penis "felt like hairy and weird" to G.L. *Id*. at 187.

[9] After Sorgdrager left, he returned briefly and told G.L. that he loved her. Mother had come upstairs around this time because she heard footsteps, and she observed Sorgdrager at G.L.'s door. She believed he was telling her goodnight. Mother and Sorgdrager then went to bed.

[10] The rest of the weekend G.L. did not tell Mother what had happened. G.L. later explained, "I just didn't trust her." *Id*. at 190. G.L. wanted, instead, to report the incident to Nicole, which she did as soon as she returned home on Sunday. Nicole and Father then contacted the authorities.

[11] That same night, G.L. submitted to a sexual assault exam, during which she provided details of the sexual abuse to the sexual assault nurse examiner (the SANE) performing the exam. Among other things, G.L. reported to the SANE: "[Sorgdrager] licked his finger and put it in my vagina and moved it back and forth, it hurt." *Exhibits* at 29.

[12] Forensic testing later revealed the presence of male DNA on certain swabs from the evidence collection kit completed during the sexual assault exam. While male DNA was present on, among others, swabs taken from G.L.'s breasts, vagina, and external genitalia, the amount of DNA collected was insufficient for further analysis. However, a swab of G.L.'s bra, which was collected later, contained sufficient DNA for testing, and the test results provided "strong support for the position that Ray Sorgdrager is a contributor to the DNA profile." *Transcript Vol. 3* at 185.

[13] A family case manager with the Indiana Department of Child Services spoke with Mother on November 27, 2018, and informed her of G.L.'s allegations. Mother expressed shock. She stood by Sorgdrager's side throughout the subsequent investigation. Mother and her younger daughters had some visits with G.L. thereafter, but G.L. never spent the night at their home and had no contact with Sorgdrager again.

[14] On May 6, 2019, the State charged Sorgdrager with two counts of child molesting. Count I, the Level 1 felony, alleged that Sorgdrager "did place his fingers in the female sex organ of G.L." *Appendix* at 20. Count II, the Level 4 felony, alleged generally that he "did perform or submit to fondling or touching with G.L. … with the intent of arousing or satisfying the sexual desires of G.L. or Sorgdrager." *Id*. at 22.

[15] Within about a month of the charges being filed, Father and Nicole were informed that Mother wanted to give up her parental rights and have Nicole adopt G.L. This was heartbreaking for G.L., especially losing the relationship with her sisters. According to Father, when he delivered the news to G.L., she had a panic attack – "crying, hyperventilating, curled up in a fetal position." *Transcript Vol. 3* at 9.

[16] Sorgdrager's jury trial did not commence until February 28, 2022, when G.L. was thirteen years old. The jury ultimately found him guilty as charged. Thereafter, on April 22, 2022, the trial court sentenced Sorgdrager to thirty-five years for Count I, as a credit restricted felon, and to a consecutive term of six years for Count II.

[17] Sorgdrager now appeals. Additional information will be provided below as needed.

## Discussion & Decision

### *1. Sufficiency*

[18] Sorgdrager initially challenges the sufficiency of the evidence supporting his conviction for Level 1 felony child molesting. Specifically, he contends that the State failed to establish "the essential element of penetration." *Appellant's Brief* at 15. He describes G.L.'s testimony as vague in this regard because she used the term "private" and failed to define what that term meant or indicate that her sex organ was penetrated by his finger.

When reviewing the sufficiency of evidence supporting a conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Fix v. State*, 186 N.E.3d 1134, 1138 (Ind. 2022). "When there are conflicts in the evidence, the jury must resolve them." *Young v. State*, 198 N.E.3d 1172, 1176 (Ind. 2022). Thus, on appeal, we consider only the probative evidence and the reasonable inferences supporting the conviction and will affirm "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Fix*, 186 N.E.3d at 1138 (quoting *Jackson v. State*, 50 N.E.3d 767, 770 (Ind. 2016)). Stated differently, our task is to "decide whether the facts favorable to the verdict represent substantial evidence probative of the elements of the offenses." *Young*, 198 N.E.3d at 1176 (*quoting Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007)).

For Count I as charged, the State was required to prove, as relevant here, an act of "other sexual conduct," which is defined by statute to include "the penetration of the sex organ … of a person by an object." Ind. Code § 35-42-4-3(a); Ind. Code § 35-31.5-2-221.5(2). Our Supreme Court has made clear that "proof of the slightest penetration of the sex organ, including penetration of the external genitalia, is sufficient to demonstrate a person performed other sexual misconduct with a child." *Boggs v. State*, 104 N.E.3d 1287, 1289 (Ind. 2018). "[A]ny penetration is enough," and the victim need not provide "a detailed anatomical description of penetration." *Spurlock v. State*, 675 N.E.2d 312, 315 (Ind. 1996), *on reh'g* (1997).

Here, G.L. testified in relevant part that, after licking his finger, Sorgdrager put his hand inside her underwear and "rubb[ed her] private area with his finger." *Transcript Vol. 2* at 186. He then licked his hand again before placing his finger "inside" her "private." *Id*. at 187. She described this as being "painful." *Id*. at 188. In addition to G.L.'s testimony, her statements to the SANE, provided within two days of the sexual abuse, were admitted into evidence. G.L.'s account included that "[Sorgdrager] licked his finger and put it in my vagina and moved it back and forth, it hurt." *Exhibits* at 29. The SANE's report noted that G.L. used the word "Vagina" to refer to the "Female Sex Organ." *Id*. at 30. Buttressing G.L.'s testimony and her report to the SANE, DNA testing revealed the presence of male DNA on the swabs taken by the SANE of G.L.'s external genitalia and vagina.

The State presented ample evidence from which the jury could find that Sorgdrager at least slightly penetrated her sex organ with his finger. *See Boggs*, 104 N.E.3 at 1289 ("proof of the slightest penetration of the sex organ, including penetration of the external genitalia, is sufficient"); *cf. Wisneskey v. State*, 736 N.E.2d 763, 765 (Ind. Ct. App. 2000) ("T.L.'s testimony that it hurt when Wisneskey stuck his penis in his 'butt,' can reasonably lead to the inference that the pain was the result of the child being sodomized.").

## 2. Double Jeopardy

Next, Sorgdrager contends that his two convictions for molesting G.L. constitute double jeopardy in violation of Article 1, Section 14 of the Indiana

Constitution.  In *Wadle v. State*, our Supreme Court adopted a new analytical framework for addressing claims of substantive double jeopardy when a single criminal act, such as in this case, violates multiple statutes with common elements.[1]  151 N.E.3d 227, 247 (Ind. 2020).  Sorgdrager expresses uncertainty regarding whether this new analysis or the prior one from *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999) should apply here given the fact that his offenses were committed prior to the *Wadle* decision but he was tried and convicted after it.  The State, on the other hand, argues that *Wadle* should be applied retroactively in this case because the convictions were not final at the time *Wadle* was decided.

[24]  We have come close to holding that *Wadle* applies retroactively to cases that were not yet final when it was decided but have yet to conclusively take that step.  *See Woodcock v. State*, 163 N.E.3d 863, 871-72 (Ind. Ct. App. 2021), *trans. denied*.  The question has continued to pester us for nearly three years.  *See, e.g.*, *id*. at 872 (finding it "unnecessary to definitively decide" the issue – especially where the State had not had the opportunity to brief the issue of retroactivity – because under either framework there was no double jeopardy violation); *Diaz v. State*, 158 N.E.3d 363, 368 (Ind. Ct. App. 2020) ("Our conclusion that there is

---

[1] The Supreme Court decided *Powell v. State*, 151 N.E.3d 256 (Ind. 2020), the same day as *Wadle*.  *Powell* addressed the new analysis to be applied "when a single criminal act or transaction violates a single statute and results in multiple injuries."  *Id*. at 263.

no double jeopardy in this case under either *Wadle* or the 'old law' allows us to avoid that potentially sticky issue, which has not been briefed here."); *Holt-Spencer v. State*, No. 21A-CR-2795, 2022 WL 1698207, at *1, n. 1 (Ind. Ct. App. May 27, 2022) ("We agree with the State that *Wadle* likely applies retroactively to double jeopardy claims."). Accordingly, we now directly address the issue.

[25] "New rules for the conduct of criminal prosecutions are to be applied retroactively to cases pending on direct review or not yet final when the new rules are announced." *Powell v. State*, 574 N.E.2d 331, 333 (Ind. Ct. App. 1991), *trans. denied* (1992); *see also Gutermuth v. State*, 868 N.E.2d 427, 431-32 (Ind. 2007) (holding that a new rule of "constitutional procedure" applies retroactively to all cases on direct review, which does not include Post-Conviction 2 belated appeals). When *Richardson* was decided over twenty years ago, the Supreme Court described it as formulating "a new methodology for analysis of claims under the Indiana Double Jeopardy Clause" and held that "this formulation constitutes a new constitutional rule of criminal procedure." *Taylor v. State*, 717 N.E.2d 90, 95 (Ind. 1999). Similarly, the new substantive double jeopardy framework established in *Wadle* constitutes a new constitutional rule of criminal procedure. *See Woodcock*, 163 N.E.3d at 871 (observing that "the purpose of *Wadle* and *Powell* was to create a new and complete framework for analyzing substantive double jeopardy claims"); *Diaz*, 158 N.E.3d at 368 ("*Wadle* did away with the 'old law' on claims of substantive double jeopardy, including the *Richardson* constitutional tests and all common-

law rules like the continuous-crime doctrine.").  As such, we hold that the *Wadle* analysis is applicable to this case, which was far from final at the time the Court adopted the new analytical framework (and overruled *Richardson*) for substantive double jeopardy claims.

[26]   In *Carranza v. State*, 184 N.E.3d 712 (Ind. Ct. App. 2022), we addressed a substantive double jeopardy claim similar to Sorgdrager's.  That is, for acts that occurred to a single victim during the same encounter, the defendant was convicted of Level 1 felony child molesting (for other sexual conduct) and Level 4 felony child molesting (for fondling or touching).  The convictions fell under subsections (a) and (b), respectively, of the Child Molesting Statute, Ind. Code § 35-42-4-3.[2]

[27]   We set out *Wadle*'s multi-step analysis as follows:

> First, we look to the statutes.  [*Wadle*, 151 N.E.3d at 248.]  If they explicitly allow for multiple punishments, no double jeopardy occurs, and our inquiry ends.  *Id*. at 248.  If the statutes are unclear, we apply Indiana's included-offense statute.  *Id*. (citing

---

[2] This statute provides in relevant part:

> (a) A person who, with a child under fourteen (14) years of age, knowingly or intentionally performs or submits to … other sexual conduct … commits child molesting, a Level 3 felony. However, the offense is a Level 1 felony if:
>
> > (1) it is committed by a person at least twenty-one (21) years of age[.]
>
> (b) A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Level 4 felony.

Ind. Code § 35-31.5-2-168). If either offense is included in the other [(either inherently or as charged)], we proceed to the second step and ask whether the defendant's actions are "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Id*. at 249. If the facts show only a single crime, judgment may not be entered on the included offense. *Id*. at 256.

*Carranza*, 184 N.E.3d at 716.

[28] Applying these steps, we first determined that "[n]either subsection (a) nor subsection (b) of the Child Molesting Statute clearly permits multiple punishments for multiple acts of molestation." *Id*.; *see also Koziski v. State*, 172 N.E.3d 338, 342 (Ind. Ct. App. 2021) ("[N]either the child-molesting statute nor the statute defining 'other sexual conduct' … clearly permits (or prohibits) multiple punishment for multiple acts of molestation against the same victim in a single encounter."), *trans. denied*.

[29] We then turned to the included-offense statute, I.C. § 35-31.5-2-168, which defines "included offense" as an offense that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or

public interest, or a lesser kind of culpability, is required to establish its commission.

In applying the statute, we concluded:

> Our included-offense statute is not implicated here because child molesting under subsection (a) of the Child Molesting Statute is not established by proof of child molesting under subsection (b) and vi[ce] versa. Unlike subsection (a), subsection (b) does not require proof of "other sexual conduct" (here, Carranza inserting his fingers in MNP's vagina). And unlike subsection (b), subsection (a) does not require proof of fondling or touching (here, Carranza rubbing his penis on MNP's vagina).[3] Carranza also was not convicted of an attempt crime, and subsections (a) and (b) of the Child Molesting Statute differ in respects other than degree of harm or culpability.

*Carranza*, 184 N.E.3d at 716.

[30]　On appeal, Sorgdrager makes no effort to distinguish *Carranza* and provides virtually no analysis regarding application of this *Wadle* step to the facts of this case. He simply quotes the charges under each count and then states: "Other than the type of molestation (as 'other sexual conduct' and 'fondling and touching') Count II is an included offense of Count I." *Appellant's Brief* at 26. What Sorgdrager fails to recognize is that the *type* of molestation is essentially

---

[3] We also note that, unlike subsection (b), subsection (a) does not require proof that the fondling or touching was done with the intent to arouse or to satisfy the sexual desires of either the child or the defendant.

what makes these offenses not included offenses. *See Carranza*, 184 N.E.3d at 716.

[31] Because Sorgdrager has failed to establish that either of his offenses is included in the other, either inherently or factually, he has not established that his convictions constitute double jeopardy. Thus, we affirm both of his child molesting convictions.

### 3. Sentence

[32] Finally, Sorgdrager requests that we exercise our authority under Indiana Appellate Rule 7(B) and independently review the sentences imposed by the trial court. He asserts that "anything above twenty (20) years executed is inappropriate." *Appellant's Brief* at 31. We do not agree.

[33] Pursuant to that rule, we may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. The principal role of App. R. 7(B) review "should be to attempt to leaven the outliers and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). App. R. 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012).

[34] Whether a sentence is inappropriate turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other

factors that come to light in a given case. *Cardwell*, 895 N.E.2d at 1224. The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). More particularly, the defendant must show that his sentence is inappropriate with "compelling evidence portraying in a positive light the nature of the offense[s] (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[35]     Regarding the nature of the offense, our Supreme Court has recognized the advisory sentence as the starting point the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). The sentencing range for a Level 1 felony is between twenty and fifty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4(a). The trial court imposed a slightly aggravated sentence of thirty-five years on Count I. For Count II, the Level 4 felony, the trial court imposed the advisory sentence of six years and made it consecutive to Count I. *See* I.C. § 35-50-2-5.5 (providing for a sentencing range of two to twelve years). The trial court also designated Sorgdrager as a credit restricted felon on Count I.[4] *See Sharp v. State*,

---

[4] As a credit restricted felon, Sorgdrager would initially earn one day of credit for every six days of imprisonment. *See* Ind. Code § 35-31.5-2-72 (defining a credit restricted felon to include a person convicted of child molesting involving other sexual conduct if the person is at least twenty-one years of age and the victim is less than twelve years of age); I.C. § 35-50-6-4(c) (a credit restricted felon is initially assigned to

970 N.E.2d 647, 651 (Ind. 2012) (holding that "evaluation of a defendant's sentence may include consideration of the defendant's credit time status because this penal consequence was within the contemplation of the trial court when it was determining the defendant's sentence").

[36]     When imposing the slightly aggravated sentence on Count I to be served consecutively with Count II's advisory sentence, the trial court emphasized the far-reaching impact the sexual abuse had on G.L., as well as Sorgdrager's violation of his position of trust as her stepfather. Indeed, the record reveals that G.L. lost her relationship with her mother and – "probably the most heartbreaking for [G.L.]" – her two little sisters because of Sorgdrager's actions. *Transcript Vol. II* at 230. G.L. had just turned ten years old when Sorgdrager abused his position as her stepfather and repeatedly molested her that night, just across the hall from where his three-year-old daughter was sleeping and with his wife and other daughter in the house. Further, though more than three years removed from the abuse, G.L. continued to suffer trauma and fear and require counseling. In sum, Sorgdrager has not presented "compelling evidence portraying in a positive light the nature of the offense." *See Stephenson*, 29 N.E.3d at 122. We therefore conclude that the nature of his offenses does not warrant a lesser sentence.

---

credit time Class C); I.C. § 35-50-6-3.1(d) (a person assigned to Class C earns one day of good time credit for every six days the person is imprisoned).

[37] Turning to his character, Sorgdrager observes that he was thirty-three years old at the time of sentencing and had no prior criminal history, which the trial court recognized as a significant mitigator. Further, Sorgdrager notes that he was married with two young children, had a high school diploma and a "good work history," presented a "low risk to reoffend," and had "an out pouring [sic] of support from family and friends." *Appellant's Brief* at 30. Even so, we find Sorgdrager's abuse of his position of trust – with a child he had known since she was an infant – and his brazenness in committing the offenses while his daughters and wife were in the home to be more telling of his character.

[38] After due consideration, we conclude that Sorgdrager has not sustained his burden of establishing that his aggregate sentence of forty-one years in the DOC is inappropriate in light of the nature of the offenses and his character. We reach this result even considering his credit status as a credit restricted felon on Count I.

[39] Judgment affirmed.

Tavitas, J., concurs.

Brown, J., concurs in part and dissents in part with separate opinion.

**Brown, Judge, concurs in part and dissents in part.**

[40] I respectfully dissent with respect to the majority's determination that Sorgdrager's forty-one-year sentence is not inappropriate. The advisory sentence is thirty years for a level 1 felony, *see* Ind. Code § 35-50-2-4(a), and six years for a level 4 felony. *See* Ind. Code § 35-50-2-5.5. As a credit restricted felon, Sorgdrager would initially earn only one day of credit for every six days of imprisonment. *See* Ind. Code § 35-50-6-4(c); Ind. Code § 35-50-6-3.1(d).

[41] In *Sanchez v. State*, Sanchez was convicted of three counts of class A felony child molesting for three incidents involving his two stepdaughters, and he was sentenced to forty years on each count with the sentences relating to the first victim to be served consecutive to the sentence relating to the second victim. 938 N.E.2d 720, 721 (Ind. 2010). The Indiana Supreme Court found that, while the offenses were undeniably serious and the second victim had surgery a few months before she was molested, there was no evidence Sanchez used significant force or caused any injury. *Id*. at 722. Sanchez's offenses were isolated incidents rather than systematic or repeated. *Id*. Sanchez did not have an extensive criminal record and none of his prior or pending offenses were related to the molestations. *Id*. The Court revised Sanchez's sentence to the advisory term of thirty years for the two counts related to the first victim and to forty years for the count related to the second victim and ordered that the sentences be served concurrently. *Id*. at 723.

[42]     Sorgdrager's offenses, while reprehensible, occurred on one night and involved one victim. The offenses were isolated incidents rather than systematic or repeated behavior. The record does not suggest that Sorgdrager used significant force. Further, the trial court found that Sorgdrager had a significant support network and no prior criminal history. He is married and has two dependent children. And the presentence investigation report indicates that his overall risk assessment score using the Indiana risk assessment tool places him in the low risk to reoffend category. These factors do not favor enhanced or consecutive sentences.

[43]     I would remand to the trial court with instructions to issue an amended sentencing order imposing concurrent advisory sentences with some time suspended. *See Rivers*, 915 N.E.2d at 143-144 (noting the defendant molested one victim on two occasions in a relatively short period of time and directing that his two sentences for class A felony child molesting convictions be served concurrently rather than consecutively). I concur with the majority in all other respects.